710 So.2d 296 (1998)
STATE of Louisiana, Appellee,
v.
Kelly Layne Dukes DeGUEURCE, Appellant.
No. 30334-KA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1998.
Rehearing Denied April 2, 1998.
*298 Blanchard, Walker, O'Quin & Roberts by A.M. Stroud, III, Shreveport, for Appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Randall Smith, Assistant District Attorney, for Appellee.
Before MARVIN, C.J., and STEWART and GASKINS, JJ.
MARVIN, Chief Judge.
Having pleaded guilty to carnal knowledge of her teenage student, this 28-year-old school teacher, Kelly Layne Dukes DeGueurce,[1] appeals, arguing the constitutional excessiveness of her sentence to three years at hard labor and the illegality of the trial court's imposing both the three-year hard labor sentence and requiring the teacher to make restitution to the victim or his family of an unstated amount expended for the student's medical treatment or serve an "additional" year in jail.
In a third assignment of error, defendant complains that she was denied due process when her motion for reconsideration of the sentence was denied without affording her the opportunity to examine, contradict or explain "evidence" which the court relied upon that was gained from an "apparent investigation conducted sua sponte by the court."
Restitution is authorized when a sentencing court suspends a sentence and places the offender on probation. When a sentence is not suspended, restitution and additional default time are said to be illegal. See State v. Frith, 561 So.2d 879 (La.App. 2d Cir.1990), writ denied, 571 So.2d 625 (La.1990); State v. Faulkner, 570 So.2d 516 (La.App. 5th Cir. 1990).
Addressing each of the assignments, we amend to delete the illegal part of the sentence [restitution and additional default time]. We affirm the three-year hard labor sentence. We also resolve appellant's motion to vacate a trial court order, signed ex parte in November 1997, after the appellate record was lodged in July 1997.

FACTS
The teacher, Kelly Dukes DeGueurce, born April 4, 1967, instituted the sexual relationship with her male student, born May 31, 1980, about a month before his 15th birthday in 1995. The affair came to light several months later when the student was hospitalized for psychological treatment. We shall refer to the student as "John."
Upon learning of the affair, John's mother contacted attorney James Hall, who also served as the City Attorney of Bossier City, and the Bossier City Police Department. A video camera was then hidden in her home. The hidden camera first recorded her son and DeGueurce hugging and kissing on February 6, 1996, and the next day engaging in intercourse and oral sex.
In March 1996, DeGueurce was formally charged with carnal knowledge of a juvenile [La.R.S. 14:80] between the dates of April 1, 1995, and February 7, 1996. After her arrest, her counsel had her psychologically tested by Dr. Mark Vigen, sought discovery of the State's evidence and filed several pre-trial motions, while negotiating with the State for a plea. Apparently the State agreed with DeGueurce's counsel to answer his discovery request "informally" rather than doing so on the record, giving counsel, among other things, the entirety of the report of the Bossier City Police Department's investigation. DeGueurce formally requested discovery in a pleading filed in the record on April 9, 1996. The State asserts that it "informally" responded, at defendant's request, *299 by giving the requested material or information to defendant.
In support of her motion to reconsider her sentence filed on June 20, 1997, DeGueurce submitted to the court on June 30, 1997, as "Defendant [Exhibit] 1" page 43 of the Bossier City Police Department's "Crimes Management System Incident Report." This page first relates what Attorney Hall told police about the affair, the video tape recording, which the police obtained from him, and that the police thereafter recorded an interview with the victim, John.
Eventually, the State apparently accepted DeGueurce's offer to plead guilty with the State agreeing to nol pros other charges pending against DeGueurce and to "make no recommendation [to the court] as to sentence." DeGueurce pleaded guilty on February 14, 1997, with that agreement being stated to the court.
Believing a suspended and probated sentence would be "inappropriate," the trial court, however, stated on the record during DeGueurce's guilty plea proceedings that she would be sentenced based on information to be given to the court in a pre-sentence investigation [PSI] report to be submitted after investigation by state probation authorities.
At the sentencing hearing on June 9, 1997, the trial court made numerous references to the PSI report. According to the PSI, John suffered severe stress as a result of the affair, being hospitalized in Shreveport and treated by specialists in Dallas. The probation officer who compiled the PSI reported that he did not interview John because the boy's mother felt he was too emotionally fragile to be interviewed. The expense of John's medical treatment reached several thousand dollars, according to the PSI.
The trial court acknowledged receiving several letters on behalf of defendant, who had no prior criminal history. The court mentioned the psychological profile by Dr. Vigen that negated defendant's being a pedophile [relatively incurable], considering this to be a mitigating factor. Also noted as mitigating factors were that defendant, a first felony offender, had shown remorse, had suffered public humiliation and had been removed from her teaching position.
The court, nonetheless, concluded that a sentence less than imprisonment would deprecate the seriousness of the offense and imposed the three-year hard labor sentence. After that sentence was pronounced, the court ordered defendant to make full restitution to John's family for any losses they sustained, or to serve an additional year in jail.
In her motion to reconsider sentence filed June 20, 1997, defendant contended the sentence was excessive because it was premised upon incorrect information in the PSI about the emotional harm suffered by John. Defendant insisted the probation officer presented an inaccurate report of John's psychological condition because he relied solely upon misrepresentations made by the mother, who had not had custody of John since July 1996.
During the hearing on the motion to reconsider sentence held on June 30, 1997, counsel questioned Dr. Vigen about his reported findings. The trial court informed defense counsel he only wanted to hear information beyond what Dr. Vigen had already submitted in his written report that the court considered at the sentencing hearing. DeGueurce's counsel concluded his questioning of Dr. Vigen and his argument by submitting to the court letters from John and his father and step-mother, a judgment granting the father custody of John, and "Defendant 1," page 43 of the Bossier City police report mentioned above. The motion to reconsider asserted that John and his father had not submitted letters to the court before the sentencing because they had not been given notice of sentencing. La.C.Cr.P. art. 894.3. The trial court immediately denied DeGueurce's motion to reconsider sentence at the conclusion of the hearing. Defendant promptly appealed.
The appellate record, lodged here on July 22, 1997, includes an exhibit envelope containing things referred to by the court at the sentencing hearing: The PSI, Dr. Vigen's report, letters on behalf of DeGueurce, and periodic school supervisors' evaluations of DeGueurce, which reflect favorably on her as *300 a teacher. Also contained in the evidence envelope are Defendant 1 [page 43 of the police report mentioned above], a Bossier Parish School Board investigative report, numerous letters, including those from John, John's mother, John's father and step-mother, and the ex-wife of defendant's husband, and a copy of the judgment awarding custody of John to his father in 1996. The Bossier City police report is not included in the evidence envelope.

Argument about the hearings
We edit to delete John's name and attach to this opinion as an unpublished appendix the court's reasons for sentence [June 9, 1997] and for denying the motion to reconsider the sentence [June 30, 1997], emphasizing in each the remarks of the court of which DeGueurce complains on appeal.
Defendant made no objections at the sentencing hearing, but urges that we should find "insufficient articulation to tailor the sentence to the facts of the case" and that "unless [we are] prepared to find that the crime ... in and of itself, without regard to the particular circumstances ... warrant[s] incarceration[,] a remand is necessary in order appropriately to determine [whether] ... incarceration is mandated for this offender."
Asserting that the trial court failed to weigh the mitigating factors, defendant suggests a remand for resentencing, but not to the same judge, who is alleged to have "lost all objectivity" and to have made "many derogatory comments about Dr. and Mrs. DeGuerce." Defendant reiterates her argument made below at the hearing on the motion to reconsider sentence that as the letters from John and his father show, "the victim was not suffering from any emotional distress as a result of the incident and ... would have requested ... a probated sentence ...," specifically complaining in her appellate brief there was "no evidence ... that the victim had any mental problems ... [but rather] ... is now a normal teenager...." In support of defendant's argument at the hearing on the motion to reconsider, counsel questioned her psychologist, Dr. Vigen, and submitted the letters from the victim and his father that are mentioned above and Defendant 1.
We agree, of course, that constitutional due process requires that a defendant be given the opportunity to rebut false or invalid information of a substantial nature to which the sentencing court is exposed when there is a reasonable probability that such information may have contributed to the harshness of the sentence. We note, however, that failure to request the opportunity to rebut such information constitutes a waiver of the opportunity. State v. Telsee, 388 So.2d 747 (La.1980); State v. Richardson, 377 So.2d 1029 (La.1979); State v. Coleman, 574 So.2d 477 (La.App. 2d Cir.1991); State v. Washington, 414 So.2d 313 (La.1982).

Excessiveness assignment
The trial court at sentencing mentioned aggravating and mitigating factors in accord with La.C.Cr.P. art 894.1. This record shows that the trial court considered the sentencing criteria provided in this article. A trial court is not required to articulate every aggravating and mitigating circumstance so long as the record reflects that the court adequately considered the Art. 894.1 guidelines. State v. Smith, 433 So.2d 688 (La.1983). Important elements which should be considered are the defendant's personal history, prior criminal record, the seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981). Remand is unnecessary when the record clearly shows an adequate or substantial factual basis for the sentence. State v. Lanclos, 419 So.2d 475 (La.1982).
We do not consider this sentence too severe considering the circumstances of the case and the defendant's background. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is purposeless or needless. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one's sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The sentence is within the statutory limits and the trial court's discretion. We find *301 substantial compliance with Art. 894.1 and no manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983).
At sentencing, the trial court reviewed the PSI, letters written on behalf of defendant, and the results of a psychological examination performed on defendant, noting mitigating and aggravating factors. While the trial court recognized defendant's status as a first felony offender, it was not required to order a suspended sentence or probation for such an offender. State v. Robinson, 599 So.2d 467 (La.App. 2d Cir.1992).
There is an age difference of 13 years between defendant and John. She was his teacher when the sexual relationship started. Defendant's position enabled her to have access to the teenager, while gaining his confidence and trust and that of his family because she served as his teacher, tutor, and chaperone.
Defendant's sentence is less than one-third of the statutory ten-year maximum sentence for carnal knowledge of a juvenile. Being originally charged with molestation of a juvenile and having additional charges pending, defendant greatly reduced her sentencing exposure by bargaining to plead guilty.
Under these circumstances, defendant's sentence to three years at hard labor is within the trial court's discretion and is not excessive.

Due Process Assignment
In her third assignment of error, defendant argues the trial court erred in violating her due process rights by denying her motion for reconsideration of sentence based upon facts discovered in an investigation conducted sua sponte by the court and without affording defendant the opportunity to rebut this evidence. Defendant specifically complains the trial court "attempted to justify the sentence on the basis of information apparently received as a result of its own investigation [by referring to]
1. An investigation conducted, at the Court's request, by Lynn Austin, head of Security for the Bossier Parish School Board. (T.p. 72, 1.25, et seq.)

2. A conversation with Mr. James Hall, the City Attorney for Bossier City, who represented the natural mother of the victim in a custody battle in which she ultimately ceded custody to the father ... (T.p. 73,1.20, et seq.).
3. The police investigation which was not made part of the record for sentencing, except the portion that detailed the videotaping of the act with the consent of the natural mother. (T.p. 74,1.10, et seq.; see also, T.p. 70, 11.8-12).
4. Hundreds of calls from people who had information concerning this event. (T.p. 76,11.15-17)."
Our emphasis.
We address the specific complaints.
Lynn Austin, the head of security for the Bossier Parish School Board, was the retired and former Police Chief in Bossier City. He was first contacted in his Bossier Parish School Board capacity about John in the fall of 1995, before John's affair with defendant came to light. Austin was again contacted in February 1996 by Attorney James Hall and then by Hall's private investigator who hid the video camera in the home of John's mother, meeting with Hall and the investigator on February 12, 1996, after the camera had taped the acts that incriminated defendant. Lynn Austin's investigation began and continued in his school board capacity. Austin's report is dated June 25, 1997, after defendant was sentenced on June 9, 1997. The report is not mentioned in the reasons for sentence, but is mentioned in the reasons for denying defendant's motion to reconsider the sentence. In any event, defendant made no attempt to rebut what Austin reported.
After defendant was charged, defendant had obtained before sentencing, by filing formal discovery on April 9, 1996, the Bossier City police report of which she complains. Page 43 of that report, earlier mentioned, relates the cooperation with the police by school authorities and by Attorney Hall and the circumstances about the videotape. Defendant submitted page 43 of the police report as "Defendant 1" at the hearing on the motion to reconsider.
*302 Moreover, the trial court, on June 30, 1997, explained in its reasons for denying reconsideration that "... since sentencing I've been contacted by ... Lynn Austin, who is the head of Security for the Bossier Parish School Board, who is the retired Police Chief for the City of Bossier, with regard to his independent investigation...." Our emphasis.
We agree with defendant that the Bossier police report was not a part of the record for sentencing, except Defendant 1, submitted by defendant after sentencing at the hearing on the motion to reconsider. In its reasons for denying the motion to reconsider, the court mentioned "the information that I have received from Mr. James Hall, who is the City Attorney ... who was involved in this investigation and at whose request the videotape was made."
In its reasons for sentence on June 9, 1997, the trial court mentioned receiving a number of letters "on [defendant's] behalf," and after sentencing, "hundreds of calls." An exhibit envelope filed with the record on July 22, 1997, contains many letters to the court regarding defendant. Most are dated, the earliest date being February 25 and the latest June 20, 1997, the sentencing date being June 9. Defendant filed her motion to reconsider on June 20, 1997. Compare "letters of recommendation" in State v. Tully, 430 So.2d 124, 127 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La.1983).
Before the trial court pronounced its reasons denying reconsideration of sentence on June 30, defendant's counsel thanked the court for its consideration, urging that "on the facts the court now has ... that a suspended period ... of confinement would be appropriate."
The court then directed what documents should be contained in the record, mentioning that "when it came time to sentence Mrs. DeGuerce, I was at a severe disadvantage because I was not provided with a lot of detailed information concerning her past, her bizarre sexual activities and conduct. However, since sentencing Mrs. DeGuerce, I've been contacted by a number of people who have been aware of both Mrs. and Dr. DeGuerce's sexual propensities." The court also mentioned "after the sentencing ... [receiving] hundreds of calls from people who had information...." The court detailed some information, but not its source, that had been reported to it after sentencing. We have emphasized that portion of the court's remarks about which defendant complains on appeal.
We find that none of the remarks or information recited by the trial court after sentencing at the hearing on the motion to reconsider sentence warrants our disturbing the three-year hard labor sentence. In short, Dr. Vigen's report, submitted before the sentence, mentions defendant's favorable and unfavorable psychological traits, the "most likely diagnosis" being "Passive-Aggressive Personality ...," resulting in "[difficulty] maintaining healthy relationships." The court considered the letters submitted by the victim and his father, mentioning that "[as] I read the letter from [the victim on behalf of defendant] ... it's very obvious that [he] has some ... mental problems."
We find the remarks to be within the trial court's prerogative and reiterate our conclusion that we should not disturb the trial court's weighing and assessment of the evidence presented to it before or after sentencing. Defendant exercised her opportunity to rebut or refute the account of John's mental condition contained in the PSI report. Defendant did not attempt to rebut, as false or invalid, any other information to which the sentencing court may have been exposed, including the information mentioned for the first time at the hearing on the motion to reconsider. The trial court had discretion to reject defendant's contention that the victim did not suffer emotional trauma from the affair and had become, a year or so afterward, a normal teenager. We find no error.

The Police Report
After the record was lodged in this court on July 22, 1997, the trial court, on November 6, 1997, granted the State's motion to "File Discovery [the Bossier City police report] in the Record." The State asserted that it had "informally" responded to defendant's request for discovery by giving defendant a copy of the Bossier City Police report.
*303 The trial court's order caused the district court clerk to send the motion and order and the police report to the clerk of this court. Immediately the defendant filed here on November 13, 1997, a motion to vacate the trial court's order. Another panel of this court referred that motion to vacate to this appellate panel, but directed that the trial court submit to us a per curiam explaining what was considered at sentencing below.
The trial court's per curiam dated January 9, 1998, reads as follows:
In sentencing Kelly Layne Dukes DeGuerce, the Court took into consideration the pre-sentence investigation together with a number of letters, the report of the Bossier City Police Department Offense Report, and a synopsis of the school board investigation conducted by Mr. Lynn Austin, the former Chief of Bossier City Police Department and now head of security for the Bossier Parish School Board.
I also took into account the sentencings imposed in similar cases and the serious nature of the Offense.
As earlier mentioned, one page [page 43] of the Bossier City police report was submitted to the trial court by defendant at the hearing on the motion to reconsider as "Defendant 1."
Of course a trial court may correct a deficiency in the record after an appeal has been entered. La.C.Cr.P. art. 916(2). Likewise, the State, as any appellee, may designate parts of the record not otherwise designated by the appellant. The problem, however, is that according to this record, the police report was not formally offered or entered in the record at any time before November 6, 1997, and then only ex parte by the State. There was no deficiency in the record before November 6 for the trial court to correct. The State, as appellee, could not have designated a document not in the record to supplement the record.
Under these anomalous circumstances, we hereby grant defendant's motion to vacate the trial court's order of November 6, 1997, and direct the clerk of this court, upon this opinion becoming final, to remove the November 6 motion and order and the police report from the record and separately return those documents to the State.
We find no undue prejudice to defendant from the fact that the police report has been belatedly sent to the clerk of this court. Defendant indeed submitted "Defendant 1" to the trial court [page 43 of the report], but has made no effort here or below to rebut or refute any assertion in the report. The only attempted rebuttal or refutation of anything stated by the trial court is defendant's assertion that John suffered no emotional trauma and that John's mother had mental problems.

DECREE
Defendant had opportunities to rebut or refute what the trial court considered at sentencing and at the hearing on the motion to reconsider. At the hearing on the motion for reconsideration, she only attempted to refute the report of the victim's mental condition contained in the PSI. We find no error in the trial court's denial of the motion to reconsider the sentence. We amend to vacate the order of restitution and the default sentence of one year in jail. As amended, the sentence to three years at hard labor is AFFIRMED.
STEWART, J., concurs with reason.
STEWART, Judge, concurring.
Considering the record evidence, I agree that a three year sentence is not excessive. However, I disagree with the majority opinion's resolution of comments made by the trial court at hearing on the motion to reconsider sentence.
A trial judge must at all times avoid the appearance of impropriety and must not compromise the complete impartiality of the judicial function by giving the impression that he has assumed the investigative duties of the prosecution and law enforcement. Such conduct may lead to the consideration of information or evidence not properly before the court. As a result, neither the defendant nor the prosecutor will be afforded the opportunity to contest the veracity of this improper information or evidence.
In the instant case, had defendant objected to comments by the trial court regarding *304 information not in evidence during the motion to reconsider sentence, the issue would have been properly preserved for this court to determine whether the trial court's comments were based upon evidence outside the record. Consequently, this court may have been forced to remand the case for resentencing.
Because the information in the presentence investigation report contained ample evidence to support the sentence imposed, I do not object to the three year sentence. However, the requirement of complete neutrality by the trial judge is essential to the concept of a fair trial and sentence. When a judge becomes overzealous in his own judicial function, he renders his fairness as a judge suspect.
For that reason, I respectfully concur.

APPLICATION FOR REHEARING
Before MARVIN, C.J., and HIGHTOWER, WILLIAMS, STEWART and GASKINS, JJ.
Rehearing denied.
NOTES
[1] The correct spelling of the defendant's last name is "DeGueurce." The name is sometimes spelled "DeGuerce" in this record. Except when quoting from portions of the record which contain the misspelling, we shall use the correct spelling in this opinion.