722 So.2d 373 (1998)
STATE of Louisiana, Appellee,
v.
Terry EMERSON, Appellant.
No. 31,408-KA
Court of Appeal of Louisiana, Second Circuit.
December 9, 1998.
*375 Amy C. Ellender, Mer Rouge, Counsel for Appellant.
Richard P. Ieyoub, Attorney General, Jerry L. Jones, District Attorney, J. Michael Ruddick, Assistant District Attorney, Counsel for Apellee.
Before BROWN, WILLIAMS and PEATROSS, JJ.
WILLIAMS, Judge.
The defendant, Terry Emerson, was indicted by a Ouachita Parish grand jury for the offense of second degree murder, a violation of LSA-R.S. 14.30.1. After a jury trial, the defendant was found guilty of manslaughter, a violation of LSA-R.S. 14.31. The trial court sentenced the defendant to serve thirty-six years imprisonment at hard labor. The defendant appeals his conviction and sentence. For the following reasons, we affirm.

FACTS
On December 9, 1994, at approximately 2:00 a.m., the defendant, Terry Emerson a/k/a "T-Love" and Brandon Flintroy began arguing in the parking lot of Nelson's Drive-In, located in Monroe, Louisiana. During this argument, Jerome Hudson approached the defendant and struck him without warning. Hudson and the defendant began fighting. An acquaintance of both men, Charles Owens, testified that he intervened and brought a temporary halt to the fight, but Owens said that the fight resumed when Hudson threw his pager at the defendant, hitting him on the head. The defendant then forced Hudson to the ground and appeared to have won the fight. Several witnesses testified that defendant then went inside the building, followed by Hudson a short time later.
Joe Bass, the son of Betty Nelson, the owner of the drive-in, testified that he helped to break up the fight and led Hudson into the building. Bass stated that he and Hudson walked into the rear of the building, which Nelson used as a residence. Other witnesses did not see Bass take Hudson inside. Bass testified that when he and Hudson reached the residence kitchen, he tried to calm Hudson while waiting for the police, and that he did not know defendant's whereabouts at the time. Bass stated that as he walked back through the hallway from the residential kitchen, he met the defendant coming the other way. Bass testified that the defendant pushed him aside, approached Hudson and with an "overhand" motion, stabbed the victim in the chest with a large kitchen knife. Bass said that Hudson appeared to have been unarmed.
Myland Cherry, a cook at Nelson's, testified that he saw the defendant in the restaurant's kitchen and told him to leave. Cherry stated that defendant left the kitchen just as Hudson came through the hall. However, Cherry did not see Bass until after the stabbing. Cherry testified that he observed the defendant stab the victim on "the spur of the moment" and that he heard the defendant say "I'll kill you" just before the stabbing. Cherry stated that as the defendant approached with the knife, Hudson stopped, backed up towards the storage area and said "No, T-Love" just before he was stabbed. Cherry did not notice whether Hudson held anything in his hands.
Hudson, bleeding and holding his chest, stumbled outside and collapsed in the parking lot. Betty Nelson testified that after learning of the disturbance she entered her residence kitchen. Nelson found the defendant standing near a corner and noticed that a picture, which had fallen from the wall onto the floor, was stained with blood. Nelson then walked outside and discovered the victim on the ground. Paramedics transported Hudson to the hospital, where he died. In the course of treatment at the hospital, medical personnel cut away the victim's pants and discovered several bags of marijuana.
Many of the witnesses heard what they described as gunshots fired in the parking lot *376 at some point during these events. The shots caused the crowd to scatter. Generally, the witnesses were unsure whether the shots were fired before or after the stabbing. Charles Owens testified that the shots were fired after the defendant had entered the restaurant but before Hudson went inside. Charles Mitchell, a friend of the defendant and the victim's cousin, testified that he saw Flintroy fire several shots after both the defendant and the victim went inside the restaurant. Antonio Mitchell, the brother of Charles Mitchell, testified that he saw Flintroy and another man shooting guns after the defendant and the victim had entered the restaurant.
The defendant fled from the scene. Local police obtained an arrest warrant but were unable to find the defendant. In July 1995, the defendant was finally apprehended in Seattle, Washington, where he was apparently using the name Yatterius Dorsey. Defendant was indicted for second degree murder. After a jury trial, defendant was convicted of manslaughter. Citing his extensive criminal record, the trial court sentenced the defendant to serve 36 years imprisonment at hard labor. The defendant filed a timely motion to reconsider sentence, which was denied. Defendant appeals his conviction and sentence.

DISCUSSION

Sufficiency of the Evidence
The defendant argues that the evidence produced at trial was insufficient to support his conviction of manslaughter. Defendant contends that the state failed to show that he did not act in self-defense.
The issue of the sufficiency of the evidence to convict is properly raised by a motion for post-verdict judgment of acquittal under LSA-C.Cr.P. art. 821. No such motion appears in the record. However, this court will consider sufficiency complaints raised as assignments of error even in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Taylor, 28,736 (La.App.2d Cir. 10/30/96), 682 So.2d 827.
Whenever there is conflicting testimony as to factual matters, the determination of credibility of the witnesses is within the sound discretion of the trier of fact. This factual determination will not be disturbed on review unless clearly contrary to the evidence. State v. Walker, 29,877 (La.App.2d Cir.10/29/97), 702 So.2d 18.
The crime of manslaughter is defined as a homicide which would be either first or second degree murder, but the offense was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. LSA-R.S. 14:31. On appeal, the defendant argues that the killing was justified. Pursuant to LSA-R.S. 14:20, a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
A defendant who raises self-defense as a justification for his or her act does not have the burden of proof on that issue. Because of its burden to prove a criminal act, the state must show beyond a reasonable doubt that the crime was not committed in self-defense. State v. Walker, supra. Thus, the state must show beyond a reasonable doubt that the defendant did not reasonably believe that he was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary to save himself from that danger. State v. Cotton, 25,940 (La.App.2d Cir.3/30/94), 634 So.2d 937.
The defendant argues that the fight in the parking lot, the gunshots and the testimony of Cherry showed that the stabbing was in self-defense. Defendant contends that Bass' testimony, that the killing *377 occurred in the residence kitchen, was contradicted by another witness and was not credible. However, the defendant's argument is not supported by the record.
Despite the alleged inconsistencies and the differing observations of the witnesses, the evidence demonstrates that defendant could not have reasonably believed either that he was in imminent danger of death or great physical harm, or that the killing was necessary to save himself from the danger. The state presented the testimony of Bass and Cherry, who did not see the victim with a weapon before he was stabbed. Neither witness described the victim as pursuing the defendant. To the contrary, Cherry stated that the defendant seemed to be crouching in the kitchen before he lunged to attack when he saw Hudson. The testimony indicated that the victim backed away from the defendant, pleading not to be hurt, as defendant advanced with the knife saying "I'll kill you."
Nor did the alleged firing of gunshots create justification. There was little demonstrable connection between any shots fired in the parking lot and the defendant's actions. Most of the witnesses testified that the shots were fired sometime after both men were already inside the building. Even if defendant had heard gunshots, he could not reasonably have believed that he faced imminent harm from the victim, whom the defendant could see was unarmed given their close physical proximity and the evidence that the victim's hands were raised, as indicated by the defensive injury to his forearm. Thus, the evidence shows that defendant knew when he stabbed the victim that he did not have a weapon.
Factors to consider in determining whether a defendant possessed a reasonable belief that the killing was necessary include the possibility of using less than deadly force and the possibility of escape. State v. Brown, 414 So.2d 726 (La.1982); State v. Hardeman, 467 So.2d 1163 (La.App. 2d Cir. 1985). Here, the state presented testimony that defendant was able to physically subdue Hudson without using a weapon in their earlier confrontation, and that defendant's vehicle was parked nearby, so that escape from the scene was possible. However, the defendant deliberately chose to enter the building and obtain a knife from the restaurant kitchen. Viewing all of the foregoing evidence in the light most favorable to the prosecution, the jury could have found that the state proved beyond a reasonable doubt that the defendant was not acting in self-defense when he committed the killing. Therefore, the record supports defendant's conviction for manslaughter. The assigned error lacks merit.

Jury Instructions
In two assignments of error, the defendant contends that the trial court's jury instructions were inadequate and incomplete. Specifically, the defendant urges that the trial court erred in refusing to instruct the jury to acquit the defendant if it found only negligent homicide and in giving a "flight" charge.
LSA-C.Cr.P. art. 807 provides:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury....
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
LSA-C.Cr.P. art. 814A(3) provides the responsive verdicts for second degree murder, the offense charged to defendant. Negligent homicide is not a responsive verdict to second degree murder. However, in cases involving various grades of murder, such as first or second degree murder, or manslaughter, when there is evidence from which the jury can infer that the defendant is guilty of negligent homicide, the trial court should instruct the jury with the defendant's requested special charge on the law of negligent homicide. State v. Marse, 365 So.2d 1319 (La.1978); State v. Williams, 606 So.2d 1387 (La.App. 2d Cir.1992). The trial court's refusal to give a requested special charge does not warrant reversal of the defendant's conviction unless it prejudices substantial rights of the accused. LSA-C.Cr.P. *378 art. 921; State v. Vergo, 594 So.2d 1360 (La.App. 2d Cir.), writ denied, 598 So.2d 373 (La.1992).
Whether the trial court erred in refusing defendant's requested instruction as to negligent homicide depends upon whether the negligent homicide verdict is fairly supported by the record. State v. Vergo, supra. If the refusal to give the instruction was error, that error is prejudicial only if the jury had insufficient information to understand that if the defendant was guilty only of negligent homicide it should find him not guilty of the charged offense. Marse, supra.
At trial, the court agreed to include the definition of negligent homicide in the charge, but refused to include a statement instructing the jury to acquit the defendant if it found him guilty of negligent homicide. The court gave the jury the following instruction:
Negligent homicide is the killing of a human being by criminal negligence.
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
The defendant is not charged with negligent homicide, nor is negligent homicide a responsive verdict in this prosecution.
Despite the trial court's ultimate inclusion of the charge, this record is devoid of evidence from which the jury could infer that the killing was a negligent homicide. Cherry testified that the defendant, armed with a knife, advanced toward the victim stating "I'll kill you" before stabbing him. This was unmistakably deliberate and intentional conduct. See State v. Jasper, 28,187 (La.App.2d Cir.6/26/96), 677 So.2d 553, writ denied, 96-1897 (La.2/21/97), 688 So.2d 521. There was no evidence, for example, that the defendant accidently stabbed the victim. Both Bass and Cherry described the defendant's deliberate arm motion as he stabbed Hudson. Without evidence in the record to support a finding that the killing was a negligent homicide, the court's refusal to give a different charge is not reversible error. The argument lacks merit.
The defendant also contends the trial court erred in including the state's requested jury instruction concerning flight. The defendant argues that the inclusion of this charge was error because there was no evidence presented that he fled the scene, concealed himself from authorities or attempted to avoid apprehension. The trial court gave the following jury instruction:
Evidence of flight, concealment, and attempt to avoid apprehension is relevant. It indicates consciousness of guilt and, therefore, is one of the circumstances from which the jury may infer guilt.
This instruction is a correct statement of the law. State v. Fuller, 418 So.2d 591 (La.1982); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (La.1992).
Captain David Harris, of the Ouachita Parish Sheriff's Office, investigated this offense shortly after its occurrence and developed the defendant as a suspect. Captain Harris testified that when he arrived at the scene, the defendant was not present, that police units had not chased defendant and that after securing an arrest warrant, attempts to find defendant were unsuccessful. Captain Harris stated the defendant was apprehended seven months later in another state.
There is no requirement that a subject's departure from the scene of an offense coincide with police pursuit in order to constitute flight. When the facts show that the defendant actually left the scene before police arrived, courts have allowed the flight instruction. See State v. Davies, 350 So.2d 586 (La.1977); State v. Powell, 28,788 (La. App.2d Cir.11/1/96), 683 So.2d 1281, writ denied, 97-0092 (La.5/30/97), 694 So.2d 243. The above testimony establishes that defendant did not remain at the scene after knowingly stabbing another individual. Based on the facts in the record, there is sufficient evidence to support the jury instruction. The assignments of error lack merit.

*379 Exclusion of Evidence

The defendant contends the trial court erred in excluding evidence of marijuana, which was concealed in the decedent's pants and discovered by hospital personnel. Defendant argues that this evidence was probative of the victim's state of mind, which was relevant to the cause of his aggression and the reasonableness of defendant's belief that the stabbing was necessary to avoid great bodily harm.
LSA-C.E. art. 401 provides that "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. All relevant evidence is generally admissible. LSA-C.E. art. 402. The trial court is vested with wide discretion in determining whether evidence is relevant. State v. Stowe, 93-2020 (La.4/11/94), 635 So.2d 168; State v. Griffin, 618 So.2d 680 (La.App. 2d Cir.), writ denied, 625 So.2d 1063 (La.1993).
Here, the state filed a motion in limine to prevent the defense from making reference to the marijuana without establishing its relevance. The trial court found that the victim's possession of marijuana was irrelevant and excluded the evidence.
The defendant has failed to show that the trial court abused its discretion in excluding the marijuana evidence. The record does not contain any evidence connecting the victim's possession of marijuana to his conduct during the fight. No witness testified that the victim was using or appeared to be under the influence of drugs. The evidence does not show that the defendant knew or believed that the victim was under the influence of drugs, was in possession of drugs or that he was a drug dealer. Based on this record, we cannot say the trial court erred in excluding the evidence as irrelevant. The assigned error lacks merit.
Defendant contends the trial court erred in refusing to allow Rachelle Price to testify about her telephone conversation with the defendant shortly after the stabbing. The defendant argues that the content of this conversation was admissible under LSA-C.E. art. 801 D(4), which provides:
A statement is not hearsay if:
The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
In Buckbee v. United Gas Pipe Line Co. Inc., 561 So.2d 76 (La.1990), the supreme court stated that the res gestae rule is properly limited to spontaneous words or acts of the participants at the time of the occurrence, rather than a participant's narration of events. The res gestae exception permits admission of events speaking through participants, but not the testimony of participants speaking about events. State v. Williams, 331 So.2d 467 (La.1976).
Here, Price testified that defendant telephoned her approximately one hour after the stabbing. When the defense counsel asked about the content of that conversation, the prosecutor objected on the grounds that the evidence was hearsay. The trial court sustained the objection. In accordance with LSA-C.E. art. 103A(2), the defendant proffered Price's testimony. Price testified that during the telephone conversation, defendant stated that "they" were "trying to crowd me" and that he wasn't trying to hurt the victim. "He was just trying to defend himself."
Despite the defendant's contention that his statements were admissible because they were made shortly after the incident, a narrative account of an event, made either by a witness or by a party, is hearsay and thus inadmissible under the ambit of LSA-C.E. art. 801 D(4), regardless of its proximity in time to the event itself. Pursuant to Article 801 D(4), it is not the proximity to the event which removes the statement from hearsay exclusion. Rather, it is the statement's integral connection to the event that permits its admission.
*380 The testimony sought to be introduced falls squarely within the prohibited category of "testimony of participants speaking about events." Buckbee, supra. Had the defendant said "Stop crowding me!" during the event, evidence of that statement would not be hearsay. However, the proffered evidence was clearly inadmissible because the defendant's statement was made narratively, recounting an event which had purportedly happened. The argument lacks merit.
The defendant also contends that the evidence is admissible under LSA-C.E. art. 803(3), which provides an exception to the hearsay rule for statements of the declarant's then existing mental, emotional or physical condition. This contention also fails. Such "state of mind" evidence is not admissible to prove a speaker's past conduct. State v. Langley, 95-1489 (La.4/14/98), 711 So.2d 651; State v. Holland, 544 So.2d 461 (La. App. 2d Cir.1989). Evidence of intent is similarly inadmissible to prove past action. Article 803(3) allows such evidence to prove only the declarant's "then existing condition or his future action." The proffered testimony concerning defendant's later claim not to have intended to hurt the victim does not meet this standard. Because the evidence sought to be introduced was hearsay not admissible under any exception to the rule, we cannot say the trial court erred in excluding the testimony. The assignment of error lacks merit.

Excessive Sentence
The defendant argues the trial court erred in imposing an excessive sentence. He contends that the sentence was based upon inaccurate information contained in the presentence investigation report.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983).
The articulation of the factual basis for a sentence is the goal of LSAC.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982).
The second inquiry involves constitutional excessiveness. Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Davis, 28,662 (La.App.2d Cir.9/25/96), 680 So.2d 1296.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court does not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La. 1983); State v. Henton, 28,576 (La.App.2d Cir.9/25/96), 682 So.2d 777, writ denied, 96-2590 (La.03/27/97), 692 So.2d 391. We do not set aside a sentence for excessiveness if the record supports the sentence imposed. LSA-C.Cr.P. 881.4 D.
Prior to imposing sentence, the trial judge reviewed a presentence investigation (PSI) report. The trial court relied extensively on the defendant's prior criminal record in justifying the sentence. The trial judge mentioned the details of that record, considered the defendant's family history and noted, in regard to the defendant's recent kidnapping charge, that the district attorney's office had informed the court that a woman was frightened of the defendant. As recited in the PSI report, the defendant's adult criminal record includes convictions for simple battery, simple robbery and aggravated battery with a gun.
*381 In his prior motion for reconsideration and in his brief, defendant raises several alleged inaccuracies with respect to his criminal record. The defendant argues that he has never been involved in a kidnapping, that his presence at Nelson's did not violate the terms of his parole, that the court improperly relied on charges which were nol prosequied, and that the information regarding the March 1991 battery convictions is incorrect.
While a defendant is guaranteed the right to contest allegations and statements in a PSI report and additional information to which the sentencing court was exposed, defense counsel must make a timely request for access to the PSI report prior to sentencing and must make some showing that the report contains, or that other information upon which a trial court relies in imposing sentence consists of, materially false or misleading information prejudicial to the defendant. State v. Coleman, 574 So.2d 477 (La.App. 2d Cir.1991); See also State v. DeGueurce, 30,334 (La.App.2d Cir.2/25/98), 710 So.2d 296. There is no evidence in this record that the defendant requested access to the information in the PSI before sentencing.
Ordinarily, the failure to seek access to the PSI report information and challenge its accuracy waives any claim of error after sentence is imposed. See, State v. Davis, 528 So.2d 615 (La.App. 2d Cir.1988), writ denied, 531 So.2d 472 (La.1988); DeGueurce, supra. However, in one respect the issue may not be waived. Here, as in Davis, the trial court relied on prejudicial information, which the defendant contends to be false, that was not included in the PSI. Where, in imposing a heavy sentence, the trial court relies upon pre-sentence information which is materially false, the defendant must be given an opportunity to rebut such significant misinformation. State v. Underwood, 353 So.2d 1013 (La.1977).
The PSI report does not specifically mention the woman who is allegedly afraid of the defendant as a result of the alleged kidnapping. In fact, at the sentencing hearing, the court advised the defendant that this information came from the District Attorney's Office, so the PSI was not inaccurate in that regard. Thus, defendant was given the opportunity at the sentencing hearing to rebut any information which he considered significantly inaccurate and failed to do so.
Concerning the defendant's 1991 battery convictions, the PSI does not specify the dates when defendant was actually in custody, and it is unclear whether the dates listed in the report are the date of offense or conviction. Considering the lack of affirmative proof to the contrary, there is no reason to doubt the validity of the battery convictions. In light of his failure to timely raise the issue of the allegedly inaccurate information in the PSI, or to rebut any such inaccuracies therein, the defendant has not shown that the sentence imposed was based upon an invalid premise.
The defendant's other particularization complaints are also without merit. In the absence of allegations of mistake or falsehood, evidence of uncharged offenses is admissible and is a valid factor for consideration in sentencing. State v. Armstrong, 557 So.2d 1160 (La.App. 2d Cir.1990), writ denied, 564 So.2d 320 (La.1990); State v. Smith, 431 So.2d 838 (La.App. 2d Cir.1983), writ denied, 435 So.2d 463 (La.1983). The defendant does not complain that he was not the person who committed the numerous nolle prossed offenses or that the allegations were false. He urges only that the trial court relied too heavily upon the declined charges, an argument directed to the length of the sentence rather than its justification.
Finally, the defendant argues that his presence at Nelson's after 2 a.m. was not a violation of his parole. Although that statement may be accurate, the character of the establishment was a valid matter of inquiry at sentencing. During argument at trial, defense counsel noted the diner's reputation as an area of drug activity. Thus, the defendant's complaints about inaccurate information in the PSI and the trial court's reliance on other erroneous factors are without merit.
The defendant argues that the sentence is constitutionally excessive. The 36-year sentence imposed is four years less than *382 the statutory maximum 40-year sentence for manslaughter. LSA-R.S. 14:31.
The circumstances of this crime were not among the worst found in the jurisprudence. There was no evidence of deliberate cruelty to the victim or the concomitant commission of another offense, elements which make a manslaughter atypical. See State v. Freelon, 26,938 (La.App.2d Cir.5/10/95), 655 So.2d 687.
Despite the "typical" nature of this offense, however, there is little doubt that defendant is among the worst type of offenders. At the time he committed this offense, the defendant was 23 years old. He had been in "extensive" trouble with the law as a juvenile and before the age of 20, his record included three convictions for distribution of cocaine and one conviction for simple robbery, reduced from an initial charge of armed robbery. The defendant had multiple arrests for aggravated assault using a firearm, one involving a police officer victim, and his aggravated battery conviction also involved a firearm. Thus, the defendant has persistently been involved in violent offenses involving dangerous weapons.
In State v. Turks, 30,333 (La.App.2d Cir.1/22/98), 706 So.2d 1042, this court affirmed a 40-year sentence for an offender convicted of manslaughter after stabbing an unarmed victim to death. The accused, originally charged with second degree murder, pled guilty to manslaughter in exchange for the dismissal of an unrelated forgery charge. Turks was a fourth-felony offender with prior convictions for issuing worthless checks, DWI, simple arson, and forgery.
In contrast to the offender in Turks, many of the defendant's prior offenses were violent crimes against the person involving a weapon. Most significant is the defendant's conviction for simple, reduced from armed, robbery and the fact that he was on parole for that crime at the time he committed the present offense.
The trial court adequately stated its reasons for imposition of this sentence, which is neither grossly out of proportion to the seriousness of the offense nor a shock to our sense of justice. After reviewing the entire record, we cannot say the sentence is unconstitutionally excessive. Therefore, the trial court did not abuse its discretion in sentencing this defendant. The assignments of error lack merit.
We have examined the record for error patent and found none.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.