I dissent. Although I concur with the majority's disposition of appellant's second assignment of error, I would sustain appellant's first and third assignments of error and find that the trial court erred both in denying appellant's motion to withdraw his guilty plea and in sentencing him.
I believe that it is necessary to fully set forth the factual and procedural background of this case, which the majority fails to do. This case arose out of the execution of a search warrant by City of Cleveland police officers on December 19, 1999. An informant had told the police that someone named "Tez" was dealing cocaine out of 1012 Prospect, Apartment 607, in the City of Cleveland. Tez actually lived in Apartment 707, however; appellant lived in Apartment 607. The informant described Tez as 6' tall, weighing 170 pounds; appellant is 5'4" and weighs 140 pounds. At the time of this incident, appellant was missing the tip of the index finger of his right hand.
To execute the warrant, the police officers obtained a key to Apartment 607 from the landlord and, without announcing themselves, attempted to open the door to Apartment 607. Appellant, hearing suspicious noises, stepped out in the hall. The officers, who subsequently alleged that appellant had a gun, shot at appellant, shattering his left arm and leaving it totally paralyzed. Upon entering appellant's apartment, the officers found no cocaine but did find various items of drug paraphernalia relating to marijuana use.
On December 30, 1999, appellant was charged in Case No. CR-385393 with two counts of felonious assault, in violation of R.C. 2903.11. Each count contained a firearm and peace officer specification, in violation of R.C. 2941.145 and R.C. 2903.11(B) respectively.
On January 5, 2000, appellant was also indicted in Case No. CR-385392 on one count of possession of drugs, in violation of R.C. 2925.11; one count of preparation of drugs for sale, in violation of R.C. 2925.07; and one count of possessing criminal tools, in violation of R.C. 2923.24.
On April 4, 2000, the State offered a plea agreement to appellant. The State's offer was substantial: in exchange for appellant's plea to an amended charge of attempted felonious assault in Case No. CR-385393, it would delete both specifications, making the charge a third degree felony. In Case No. CR-385392, the State offered to dismiss two counts of the indictment in exchange for appellant's plea to an amended charge of attempted preparation of drugs for sale, a fifth degree felony. Thus, on the felonious assault charges, the State offered to reduce appellant's prison time from a minimum of six to thirteen years in prison on each count, including mandatory prison terms of three years on each specification, to one to five years in prison, with no mandatory term.
During discussions with the trial judge during the hearing regarding the plea offer, appellant admitted the drug charges, but emphatically denied that he had shot at anyone on December 19, 1999, stating, "I shouldn't be punished for something I didn't do. I know whether (sic) they know and God know[s], I didn't attempt to hurt nobody that day. I face up to the marijuana. I be a man to that."
After the plea offer hearing, defense counsel filed a motion for recusal of the original trial judge, in light of his perception of her undue pressure on appellant at the plea offer hearing to accept the State's offer. On April 14, 2000, a hearing was held regarding counsel's motion. On May 4, 2000, the administrative judge of the Cuyahoga County Court of Common Pleas transferred both cases to another judge "for good cause shown."
Subsequently, appellant decided to accept the State's plea offer. Because the new judge to whom the cases had been reassigned was not available, on June 20, 2000, appellant entered his plea before yet another judge. Appellant was referred to the Probation Department for a pre-sentence investigation report and sentencing was set for August 16, 2000.
On August 10, 2000, appellant filed a motion to withdraw his guilty plea. In his motion, appellant asserted that his plea was "based on information which he perceives to be based on misrepresentations by the arresting agencies as they pertain to his involvement in the case." Appellant also asserted that due to the recent shooting and death of a Cleveland police officer, he was fearful that the "current climate in Cleveland towards police" would result in a prison sentence, rather than community control.
The trial judge to whom the cases had been reassigned held a hearing regarding appellant's motion on August 16, 2000. At the hearing, appellant's counsel informed the court that this was the first motion to withdraw a plea that he had filed in twenty-five years of practice. Counsel argued that appellant's plea was not truly voluntary because, although appellant had been extremely reluctant to take the plea, he (counsel) had pressured appellant to "make a decision, make a decision," thereby tainting the voluntariness of appellant's plea. Counsel also argued that appellant's plea was not truly voluntary because the undue pressure to accept the State's plea offer exerted on appellant by the original judge on the cases had left a residual effect on appellant that remained even after the cases had been reassigned to another judge. The trial judge refused to consider how the influence of the first judge may have affected the voluntariness of appellant's plea, however, informing counsel that he was to limit his argument to only what had transpired at the hearing where appellant entered his plea.
Defense counsel also informed the trial court that appellant had changed his mind within hours of taking the plea and had telephoned him the evening of June 20, 2000, "nearly hysterical" about what he had done, to ask counsel how to vacate his plea. Defense counsel stated that in the following weeks, he spent many hours with appellant discussing the lengthy prison term he faced if convicted at trial.
According to defense counsel, appellant maintained his innocence of the felonious assault charges throughout their discussions, as he had with the original trial judge. Counsel informed the court that when the police shot appellant and shattered his arm, "there was blood everywhere." Therefore, counsel argued, if appellant did, in fact, have a gun when he stepped in the hallway and was shot by the police, he would have dropped the gun in the hallway and there would have been blood on the gun. The gun was found in a bathroom in appellant's apartment, however, and there was no blood on the gun or within ten feet of where it was found. In short, counsel asserted that appellant wanted to go to trial because the police were lying about his involvement in the events of December 19, 1999.
The trial court denied appellant's motion, reviewed appellant's presentence investigation report with him and then abruptly announced, "Sentencing on this case will be continued pending further investigation."
The next day, on August 17, 2000, the trial court sentenced appellant to a two-year prison term on the attempted felonious assault charge and one year on the drug charges, the sentences to be served concurrently. At the hearing, defense counsel noted that he had observed pictures of the alleged crime scene on the trial judge's bench that morning. Defense counsel noted that the pictures had not been produced in the hearing held the day before and that although he had asked the prosecutor for them during the hearing, the prosecutor had indicated that he did not have them in his file. The trial judge then acknowledged that he had requested the pictures from the prosecutor after the hearing:
 The Court requested them and they were provided by the Prosecutor's Office. They were requested by the Court to analyze the allegations that you made yesterday on the record.
Defense counsel objected to the ex parte solicitation of the photographs by the court and the production of the photographs by the State, noting that because the pictures were not produced in his or appellant's presence, he did not know what the prosecutor and judge had discussed regarding the photographs and, furthermore, he had not been given any opportunity, prior to sentencing, to explain the photographs. The trial judge ignored the objections and ordered appellant's sentence into execution. Despite the trial judge's assertion on the record that the pictures would be entered into evidence as the Court's Exhibit A, they are not part of the record.
In light of this factual and procedural background, it is apparent that the trial court abused its discretion in denying appellant's motion to withdraw his plea. The record clearly refutes the majority's contention that the trial court properly denied appellant's motion because he presented "totally different, largely incompatible" bases to withdraw his plea in his motion and at the hearing. Rather, the record demonstrates that appellant presented the same reason in both his motion and at the hearing for withdrawing his plea: he was innocent of the felonious assault charges and the police were lying about his involvement in the events of December 19, 1999. In his motion, appellant stated that his plea was not voluntary because it was based on "misrepresentations by the arresting agencies as they pertain to his involvement in the case." Similarly, at the hearing, defense counsel asserted that the police officers were not telling the truth about appellant's involvement in the incident because 1) appellant cannot hold a gun in his right hand because the tip of his index finger is missing; and 2) if he had been holding a gun in his left hand, he would have dropped it in the hallway when the officers shot at him and shattered his left arm. Instead, the gun was found in the bathroom and there was no blood on or around it.
Thus, contrary to the majority's assertion that appellant never asserted that he wanted to withdraw his plea because he was innocent, appellant clearly stated that he wanted to withdraw his plea because he was not guilty. A defendant's assertion that he wishes to withdraw his guilty plea prior to sentencing because he is innocent is not merely "crass opportunism," as the majority inexplicably contends, but a reasonable and legitimate basis to withdraw a guilty plea.
 When a defendant claims he is innocent and wishes to withdraw his plea of guilty prior to sentencing, a comparison of the interests and potential prejudice to the respective parties weighs heavily in the interest of the accused. That is, in such a situation we have the inconvenience to the State of proving the guilt of a defendant at trial versus the possibility that a person has plead guilty to a crime they did not commit. Absent any showing of some other real prejudice to the state which occurred solely as a result of entering into a plea bargain, as here, the potential to the state in vacating the plea is slight, whereas the potential harm to the defendant in refusing to vacate the plea is great. Statev. Cuthbertson (Sept. 21, 2000), Mahoning Cty. App. No. 98 CA 133, unreported.
Here, there is no allegation that the State's case would be prejudiced whatsoever upon the withdrawal of appellant's plea. Indeed, the only "prejudice" would be that the State would be required to prove its case against appellant despite appellant's challenge to the veracity of the State's witnesses.
The trial court's abuse of discretion in denying appellant's motion is even more glaring in light of the procedural history of this case. The judge who denied appellant's motion to withdraw his plea was not the same judge who took the plea nor even the judge who presided over the hearing to put the State's offer on the record. Thus, the judge was not privy to what had transpired in the first hearing sufficient to cause the administrative judge to transfer the cases to another judge for good cause shown. Without any knowledge regarding what had actually occurred, the judge erred in totally disregarding the residual effect on appellant of the original judge's pressure to accept the State's plea offer. To assert, as the majority does here, that any negative influence on appellant's ability to make a truly voluntary plea became entirely moot when the cases were transferred to another judge completely ignores the realities of the human psyche.
The trial judge also erred in ignoring the representations of appellant's counsel that appellant's plea was not truly voluntary because he had tainted the voluntariness of appellant's plea by pressuring him to make a decision. This representation was very significant in light of counsel's statement that this was the first such motion he had filed in twenty-five years of practice.
Accordingly, in light of appellant's consistent assertions of innocence, the representations of appellant's counsel, the lack of prejudice to the State in granting the motion and because a motion for leave to withdraw a guilty plea prior to sentencing is to be freely granted, I would find that the trial court abused its discretion in denying appellant's motion.
I would also find that the trial judge committed plain error in sentencing appellant because he conducted a sua sponte investigation prior to sentencing by obtaining photographs from the prosecutor that were not in evidence and then did not give appellant an opportunity to explain or contest the accuracy of the photographs.
 A trial judge must at all times avoid the appearance of impropriety and must not compromise the complete impartiality of the judicial function by giving the impression that he has assumed the investigative duties of the prosecution and law enforcement. Such conduct may lead to consideration of information or evidence not properly before the court. As a result, neither the defendant nor the prosecutor will be afforded the opportunity to contest the veracity of this improper information or evidence.
State v. DeGueurce (1998), 710 So.2d 296, 303.
Here, the record reflects that the trial judge concluded the August 16, 2000 hearing by announcing, Sentencing on this case will be continued pending further investigation, although neither the prosecutor nor defense counsel had requested any further investigation. The record also reflects that the judge admitted that he solicited photographs of the alleged crime scene from the prosecutor after the August 16, 2000 hearing and that the photographs were given to him outside defense counsel's presence prior to the trial court's sentencing of appellant on August 17, 2000. The record also reflects that appellant was not given an opportunity, prior to sentencing, to explain or rebut the photographs. Finally, the record reflects that the photographs were never admitted in evidence.
Fundamental due process requires that a defendant be given an opportunity to respond to information of a substantial nature to which the sentencing court is exposed when there is a reasonable probability that such information contributed to the harshness of the defendant's sentence. Here, it is apparent that the trial court considered the photographs in imposing appellant's sentence; indeed, the trial judge stated that he requested the photographs in order to analyze the statements made by defense counsel regarding the December 19, 1999 incident. It is also apparent that the trial judge sentenced appellant without allowing him an opportunity to address the photographs on the record. Accordingly, I would hold that the trial court committed plain error in sentencing appellant.