GARRETT, J.
|,The defendant, Johnny Lee Jackson, pled guilty to attempted first degree robbery and was sentenced to 15 years at hard labor without benefit' of probation, parole, or suspension of sentence. He also pled guilty to second degree robbery and was sentenced to 20 years at hard labor. The sentences were ordered to be served concurrently. Jackson appealed, claiming that his sentences are excessive. We affirm his convictions and sentences.
FACTS
On July 13, 2012, shortly before noon, Jackson and another man entered the Regions Bank on Texas Street in downtown Shreveport. Jackson gave a teller a handwritten note demanding $475 and stating that he had a gun. The note was signed, “Johnny Jackson.” The teller stalled and Jackson, empty-handed, exited the bank with his accomplice.
Karleene Silvertooth was standing outside the bank. She had just cashed her Social Security disability check and was waiting for a taxicab. She noticed Jackson and another man exit the bank and walk across the street to a car where a third man was sitting in the driver’s seat. The men kept looking back toward the bank, which Ms. Silvertooth thought was unusual. She put her purse on her shoulder and held it tightly. Jackson and his accomplice came back toward the bank. Jackson then walked toward Ms. Silvertooth. He told her he had a gun, and demanded her purse. Ms. Silvertooth said, “[Hjell no,” and a struggle ensued. Jackson hit Ms. Silvertooth in the mouth with his elbow, knocking out two of her teeth. In the struggle, Jackson pushed her and she fell to the sidewalk, injuring her hip and arm. *995 Jackson dragged her along the sidewalk until her purse strap |2broke. Jackson ran with the purse, but was quickly apprehended by citizens and police. Ms. Silver-tooth was taken to the hospital for treatment of her injuries.
Jackson was arrested and charged with attempted first degree robbery arising from his attempt to rob the bank, and second degree robbery for taking Ms. Sil-vertooth’s purse and causing her serious bodily injury. On September 13, 2012, Jackson pled guilty as charged to both offenses, with sentencing left up to the trial court. Jackson acknowledged that he understood that his sentencing exposure was 20 years at hard labor without benefits on count one and 40 years at hard labor on count two, and the sentences could be run consecutively.
Ms. Silvertooth was present at the guilty plea and related to the court what occurred during the second degree robbery. She testified that Jackson and his accomplice had seen her in the bank cashing a check. When Jackson accosted her outside he said, “I have a gun, bitch, I want your purse.” Ms. Silvertooth stated that her purse contained “all my ID, my Medicare card, my birth certificate, my Social Security card, my bank book, my debit card, I had everything in my purse.” Ms. Silvertooth stated that Jackson’s actions in injuring her teeth, hip, and arm were intentional. She was still undergoing physical therapy twice a week for her arm. Ms. Silvertooth told the court, “I’m not out for blood, but I do hope the court sentences him to enough time to where he can maybe get his head and his life and his heart straightened out because what he did to me was heartless.”
The sentencing hearing was continued to September 19, 2012. On that date, the bank teller Jackson attempted to rob appeared in court andjotestified about that offense. Following her testimony, Jackson made a statement to the court. He said that he wanted to apologize and that he had never done anything like this before in his life. He said he had been “drugging and drinking” the night before he committed the offenses.
In response to questions by the court, Jackson stated that he was 39 years old, had graduated from high school, and had attended college for two years, but did not graduate. Jackson grew up in Wisconsin and Mississippi. He had worked as a certified nurse assistant and had done janitorial and grocery work. Jackson was not married and had no children. He had been in Shreveport for approximately two months prior to these offenses. Jackson said that he had been addicted to drugs and alcohol for 16 years. He admitted that he had a prior felony conviction in Wisconsin.
The court ordered a presentence investigation (“PSI”) report because Jackson had spent a good bit of time out of state. However, on October 31, 2012, the trial court rescinded the order and instead requested that the local probation and parole office prepare a criminal history report on Jackson. This report was made available to counsel prior to sentencing.
Jackson appeared before the court for sentencing on December 4, 2012. Ms. Sil-vertooth was again present in court. The prosecutor noted that her right arm was now in a cast due to surgery and that additional medical expenses had been incurred by this victim. For the offense of attempted first degree robbery, the trial court ordered Jackson to serve 15 years at hard labor without benefit of probation, parole, or suspension of sentence. For the offense of second degree robbery, the trial court sentenced Jackson to serve 20 years at hard labor. The trial court ordered that the sentences be served *996 | concurrently, even though, as two separate events, they could have been imposed consecutively. Jackson was given credit for time served.
Jackson filed a motion to reconsider his sentences, arguing they were excessive and that the trial court failed to consider “all other mitigating circumstances.” The motion was denied by the trial court and Jackson appealed.
EXCESSIVE SENTENCE
On appeal, Jackson contends that his sentences are excessive. He urges that he was prejudiced by the trial court action in cancelling the PSI because the report would have contained information favorable to him. He also claims that the trial court understated the mitigating factors and overstated his arrests. These arguments are without merit.
Legal Principles
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. State v. Elmore, 46,833 (La.App.2d Cir.12/14/11), 80 So.3d 731, writ denied, 2012-0006 (La.4/27/12), 86 So.3d 627. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the | ¡¡likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La. App.2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 2000-1467 (La.2/2/01), 783 So.2d 385; State v. Elmore, supra.
Second, a sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Elmore, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Elmore, supra.
In selecting a proper sentence, a trial court is not limited to considering only a defendant’s prior convictions but may properly review all prior criminal activity. State v. Boyte, 42,763 (La.App.2d Cir.12/19/07), 973 So.2d 900, writ denied, 2008-0175 (La.6/20/08), 983 So.2d 1272; State v. Russell, 40,526 (La.App.2d Cir.1/27/05), 920 So.2d 866, writ denied, 2006-0478 (La.9/29/06), 937 So.2d 851. The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 638 So.2d 218 (La.1994). These matters may be considered even in the absence of | fiproof the defendant committed the other offenses. State v. Estes, 42,093 (La.App.2d Cir.5/9/07), 956 So.2d 779, writ denied, 2007-1442 (La.4/4/08), 978 So.2d 324.
The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be *997 set aside as excessive in the absence of a manifest abuse of that discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra.
Under La. R.S. 14:64.1 and La. R.S. 14:27, the maximum sentence for attempted first degree robbery is 20 years at hard labor without benefit of probation, parole, or suspension of sentence. The maximum sentence for second degree robbery is 40 years at hard labor. La. R.S. 14:64.4.
Discussion
The trial court did not err in rescinding the order for a PSI, instead requesting a criminal history report. La. C. Cr. P. art. 875 provides in pertinent part that if a defendant is convicted of a felony offense, the court may order the Department of Public Safety, division of probation and parole, to make a presen-tence investigation. See also La. R.S. 15:1132. However, such an investigation is not mandatory. State v. Hall, 42,767 (La. App.2d Cir.11/21/07), 969 So.2d 827. Such an investigation is more in the nature of an aid to the court, and not a right of the accused. State v. Howard, 262 La. 270, 263 So.2d 32 (1972); State ex rel. B.A.A., 44,494 (La.App.2d Cir.5/20/09), 13 So.3d 1183; State v. Walker, 2000-1349 (La.App. 4th [7Cir.5/16/01), 789 So.2d 632, writ denied, 2001-1785 (La.5/3/02), 815 So.2d 96; State v. Torres, 05-260 (La. App 5th Cir. 11/29/05), 919 So.2d 730.
The trial court allowed the parties to review the criminal history report and gave the prosecution and defense an opportunity to line up anyone they wanted to provide information to the court regarding sentencing. The court stated that regarding the defense, it had heard only from Jackson himself. Jackson was allowed to address the court in both September and December and provided the court with information about his background. When asked if there were any comments to the criminal history report, defense counsel stated that Jackson agreed that he had one felony conviction and asked the court to note that his other arrests were either not prosecuted or were misdemeanors. Jackson had the opportunity to present to the trial court any information favorable to him or to refute any information, contained in the criminal history report. He did not object to any of the information contained in the criminal history report. Jackson has failed to demonstrate that he was prejudiced by the trial court’s action in rescinding its order for a PSI.
The trial court complied with La. C. Cr. P. art. 894.1 in imposing the sentences in this case. The trial court pointed out that Jackson said he had a prior felony conviction. Jackson’s criminal history report showed 17 entries. The trial court meticulously went through those entries, noting that some charges were dismissed and some were reduced to misdemeanors. Jackson’s criminal history included a 1995 arrest in Georgia for robbery which was not prosecuted, and a 1997 arrest in Wisconsin for criminal property damage. He was arrested in Wisconsin in 1998 for robbery with use of force and | ¡¡injury by negligent use of a weapon. Jackson was allowed to plead guilty to misdemeanor theft and endangering the safety of others with a dangerous weapon, which was á misdemeanor. Jackson was given a suspended sentence and placed on supervised probation.
In 2001, in Wisconsin, Jackson had an arrest for indecent exposure and disorderly conduct. In 2002, Jackson was arrested for robbery with the use of force, which the court noted may have been related to the 1998 offense. Jackson was arrested *998 for robbery in 2002, and there was no disposition of that charge. In 2003, Jackson pled guilty to disorderly conduct and was sentenced to 46 days in jail. Jackson was arrested in Wisconsin in 2003 for property damage, bail jumping, unlawful phone use, and threatening harm to others. He was convicted on those charges and sentenced to nine months in jail. The sentence was suspended and Jackson was placed on two years’ supervised probation which was later revoked. Jackson was arrested in Wisconsin in 2004 for theft as well as violation of a restraining order and criminal damage to property. He received a misdemeanor sentence. Jackson was arrested in Wisconsin in 2005 for vandalism, theft, and violation of a restraining order.
In 2006, Jackson pled guilty in Wisconsin to burglary of a building or dwelling, which is a felony. He was given a two-year hard labor sentence which was suspended and he was placed on four years’ supervised probation and ordered to enter a residential treatment facility. Jackson’s criminal history showed two entries for probation violations in 2009 and one in 2010, all related to the felony conviction.
|9Jackson.was arrested in Mississippi in 2010 on a fugitive warrant. In June 2012, Jackson was arrested for felony theft but pled guilty to misdemeanor theft in Shreveport and was sentenced to four days. On July 13, 2012, Jackson was arrested for the present offenses. The trial court noted that some of the entries on the criminal history were duplicates. However, the trial court stated that the numerous entries show that Jackson “had a lot of opportunities to get a hold of the issue which brings him here today.”
The trial court pointed out that, because Jackson has a prior felony conviction, the prosecution could have charged him as a multiple offender which would have greatly increased his sentencing exposure for the present offenses.
The trial court considered the sentencing guidelines set forth in La. C. Cr. P. art. 894.1. It found that there was an undue risk that during the period of a suspended sentence or probation, Jackson would commit another crime; that Jackson was in need of correctional treatment in a custodial environment that could be provided most effectively by commitment to the Department of Corrections; and a lesser sentence would deprecate the seriousness of Jackson’s crimes. The trial court also noted that Jackson’s offense involving Ms. Silvertooth showed deliberate cruelty to the victim. The trial court stated that, although Jackson said he was addicted to cocaine, he did not act under strong provocation.
As mitigating factors, the trial court noted that Jackson pled guilty as charged to these offenses, admitted his guilt, and expressed remorse. The trial court stated that, after weighing all the factors, Jackson committed two | ^serious violent felony crimes which warrant a significant hard labor punishment.
The sentences imposed in this case are not excessive. The trial court thoroughly examined Jackson’s criminal record and properly weighed the aggravating and mitigating circumstances. The trial court noted the serious injuries suffered by Ms. Silvertooth as a result of Jackson’s brutal attack upon her. Although the trial court could have imposed consecutive sentences, it chose to order that they be served concurrently. Jackson also received the benefit of not being charged as a multiple offender. The sentences are not grossly disproportionate to the severity of the offenses and do not shock the sense of justice. After reviewing the record and considering all of the factors in this case, we find that the trial court acted within its *999 discretion in the sentences imposed upon Jackson.
CONCLUSION
For the reasons stated above, we affirm the convictions and sentences of the defendant, Johnny Lee Jackson.
AFFIRMED.