Judgment rendered January 15, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,165-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

BRANDY SHACKELFORD                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 341,382

Honorable Brady O'Callaghan, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By:  Bruce G. Whittaker

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

WILLIAM J. EDWARDS
TOMMY J. JOHNSON
Assistant District Attorneys

* * * * *

Before WILLIAMS, MOORE, and THOMPSON, JJ.

**THOMPSON, J.**

This excessive sentence appeal arises from a criminal matter in the First Judicial District Court, Caddo Parish, the Honorable Brady O'Callaghan presiding. The defendant, Brandy Shackelford ("Shackelford"), pled guilty to manslaughter committed against her two-year-old son, in violation of La. R.S. 14:31. She agreed to a potential sentence range of 0-40 years and received the benefit of reduction of mandatory sentencing terms and conditions, as well as the dismissal of two additional charges in reaching her agreement with the state for sentencing ranges. She was sentenced to 25 years at hard labor with credit for time served, concurrent with any other sentence. She appeals, now claiming her sentence within the agreed upon sentence range is excessive. For the following reasons, Shackelford's conviction and sentence are affirmed.

## FACTS AND PROCEDURAL HISTORY

On May 26, 2016, law enforcement officers responded to a 911 call of alleged child abuse[1] regarding a two-year-old male, R.M. According to the officers, the child's skin condition looked pale, and he acted lethargic. The fire department offered to transport R.M. to the hospital multiple times, but the family declined. Subsequently, R.M.'s grandmother took R.M. and the other children back to her house that evening. Shackelford was taken into custody and charged with two counts of cruelty to a juvenile.[2] In the early morning of May 27, 2016, R.M. was rushed to the hospital due to trouble

---

[1] The record reflects that certain parts of the record were placed under seal. Thus, due to the sensitivity surrounding R.M.'s death, the Court will not discuss the details of R.M.'s injuries.

[2] Criminal Docket No. 341,224.

breathing. The hospital was unable to revive R.M. The cause of death was determined to be a homicide.

Shackelford was indicted by a grand jury and subsequently charged in a separate docket number with manslaughter,[3] in violation of La. R.S. 14:31, committed without intent to kill or inflict great bodily harm, while committing a simple battery. On November 13, 2018, Shackelford appeared before the trial court to accept the state's plea offer, which was recited into the record. The state offered that if Shackelford pled guilty to manslaughter, the state would not seek the mandatory sentencing range that would apply because R.M. was under the age of 10 when he died. That would reduce Shackelford's potential sentence of 10-40 years at hard labor, without benefit of probation or suspension of sentence, to 0-40 years, with no restriction of benefits. Additionally, the state would dismiss the two counts of cruelty to a juvenile that were still pending.

Judge O'Callaghan began the guilty plea colloquy with questions to Shackelford, who stated that she was born in 1984, had completed the 12th grade, and could read, write, and understand the English language. Shackelford said that she was not under the influence of drugs, alcohol, or medication, except for the medication she is prescribed for a mental health disorder. Judge O'Callaghan reviewed the terms of the plea offer with Shackelford and the sentencing range for the charge of manslaughter. Shackelford confirmed that she had discussed the charges, sentencing range, and plea terms with her attorney.

---

[3] Criminal Docket No. 341,382.

Judge O'Callaghan then proceeded to review and discuss the rights that Shackelford would waive if she elected to plead guilty. Shackelford confirmed that she understood she would waive her right to a jury or judge trial and to have the state prove its case beyond a reasonable doubt; her right to confront and cross-examine witnesses against her; her right to compulsory process; her right to remain silent; and her right to appeal her conviction. Judge O'Callaghan noted that as there was no agreed-upon sentence, Shackelford would retain her right to appeal any sentence imposed.

Shackelford stated that, other than the state's plea offer, she was not given any promises or inducements to plead guilty and was not threatened or forced to plead guilty. Judge O'Callaghan stated that the factual basis for the plea was that Shackelford committed a simple battery on the victim, without intent to kill or inflict great bodily harm, but the victim still died as a result of her actions. Shackelford agreed with the factual basis for the plea and stated that she wished to plead guilty. Judge O'Callaghan accepted Shackelford's guilty plea as knowingly, intelligently, and voluntarily made. A presentence investigation report was ordered.

On January 7, 2019, Shackelford appeared for sentencing. R.M.'s grandmother testified about him, and the developmental obstacles that he had to overcome after being born prematurely and requiring breathing treatments and corrective shoes. Judge O'Callaghan acknowledged that he had received and reviewed victim impact letters from family as well as the presentence investigation report. The state also introduced a copy of the grand jury testimony offered by the forensic pathologist who conducted R.M.'s autopsy. The trial judge reviewed all documents.

3

Judge O'Callaghan stated that after considering the circumstances of the crime and other evidence presented in the pretrial hearing, including the testimony of a neonatologist and R.M.'s siblings, he was considering a sentencing range of 5-30 years, based on the pattern of neglect and abuse, and Shackelford's willingness to plead guilty and spare the family the ordeal of trial.

Judge O'Callaghan found that a suspended or probated sentence would be inappropriate in the matter, given the circumstances and the gravity of Shackelford's correctional needs. He then reviewed the sentencing guidelines under La. C. Cr. P. art. 894.1, and found applicable the following aggravating factors.

First, Judge O'Callaghan noted that Shackelford showed deliberate cruelty to the victim, where the forensic pathologist testified that R.M. suffered a duodenal transection, a forceful and painful injury resulting from blunt abdominal trauma, and she failed to properly respond and get him treatment. Second, Shackelford knew, as the child's mother and primary caregiver, that R.M. was particularly vulnerable, given his troubled birth and the obstacles he had endured. Third, Shackelford used actual violence in the commission of the crime, which resulted in a significant injury that caused R.M.'s death. Fourth, Shackelford had a history of neglectful abuse and of prioritizing her drug use above the child's welfare. Last, as a final aggravating factor, the trial court found that, while Shackelford had accepted legal responsibility, she had not done so psychologically as she believed that she was somehow wronged, and that the criminal responsibility fell on her and not on other members of the household.

4

Judge O'Callaghan noted as mitigating factors that Shackelford did not intend to kill the child, that she had no history of prior criminal convictions, and that she suffered some impairment due to mental health issues.[4]

Judge O'Callaghan sentenced Shackelford to serve 25 years at hard labor, with credit for time served. He ordered the sentence to run concurrently to any other sentence and designated the conviction as a crime of violence. He advised Shackelford that she had 30 days to appeal her sentence and two years from the finality of the conviction and sentence to file for post-conviction relief. The state dismissed the two counts of cruelty to a juvenile that remained pending, and the mandatory sentencing provisions of the sentence being without the benefit of probation, parole, or suspension of sentence were also removed, meaning Shackelford would now be eligible for consideration for the possibility of those provisions.

On January 11, 2019, Shackelford filed a motion to reconsider sentence. She asked the trial court to reconsider her sentence in light of her age, 34, her lack of substantial criminal history, and her mental health issues. Judge O'Callaghan denied the motion on April 15, 2019, noting that he had given careful consideration to her circumstances and the circumstances of the case, and had given the previously detailed reasons explaining why the sentence imposed was appropriate. This appeal ensued.

**DISCUSSION**

In her assignment of error, Shackelford argues the trial court erred in imposing a constitutionally harsh and excessive sentence, given the

_____

[4] While in jail, Shackelford was diagnosed with bipolar disorder and schizophrenia.

5

circumstances of this case.  On review, Shackelford argues that she has a deprived and unstable background based on self-medication with illicit drugs, and now has been diagnosed with two mental health disorders.  She argues that courts have recognized that defendants with mental health issues have a diminished capacity to understand and process information and that this circumstance diminished her personal culpability.  In support of this argument, Shackelford cites *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002), in which the United States Supreme Court held that executions of criminals "suffering from a mental disability" constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  Shackelford argues that, given her mental illnesses, 25 years at hard labor was constitutionally excessive.

The state argues that the sentence was not excessive in light of R.M.'s death due to the painful blunt force trauma caused by Shackelford, Shackelford's pattern of drug abuse and child neglect, and the substantial benefit that Shackelford received by pleading guilty and receiving a reduced sentencing exposure and the dismissal of two other charges.  The state argues that the sentence was well within the sentencing range, was within the trial court's discretion, and was not a shock to the sense of justice.

Applicable law:

La. R.S. 14:31 provides that manslaughter is:

(A)(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or

6

(2) A homicide committed, without any intent to cause death or great bodily harm.

> (a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or

> (b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.

B. Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. However, if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years.

An excessive sentence claim is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1, and whether the sentence is constitutionally excessive. *State v. Wing*, 51,857 (La. App. 2 Cir. 02/28/18), 246 So. 3d 711; *State v. Gardner*, 46,688 (La. App. 2 Cir. 11/02/11), 77 So. 3d 1052.

A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance. *State v. Boehm*, 51,229 (La. App. 2 Cir. 04/05/17), 217 So. 3d 596; *State v. Cunningham*, 46,664 (La. App. 2 Cir. 11/02/11), 77 So. 3d 477, *writ not cons.*, 2016-0729 (La. 06/03/16), 192 So. 3d 758. When the defendant's motion to reconsider sentence raises only a claim that the sentence imposed was constitutionally excessive, review of the sentence on appeal is restricted to that claim. La. C. Cr. P. art. 881.1; *State v. Williams*, 51,667 (La. App. 2 Cir. 09/27/17), 245 So. 3d 131, *writ not cons.*, 2018-0017 (La. 03/09/18), 237 So. 3d 1190; *State*

7

*v. Turner,* 50,221 (La. App. 2 Cir. 01/20/16), 186 So. 3d 720, *writ denied,* 16-0283 (La. 02/10/17), 215 So. 3d 700.

A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey,* 623 So. 2d 1276 (La. 1993); *State v. Boehm, supra.* A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver,* 2001-0467 (La. 01/15/02), 805 So. 2d 166; *State v. Wing, supra.* Here, an innocent child relying on the care provided by his mother was made to suffer and die at her hands.

The trial court must state for the record the consideration taken into account and the factual basis for the sentence imposed. La. C. Cr. P. art. 894.1(C). The trial court must consider the defendant's personal history, the defendant's criminal record, the seriousness of the offense, and the likelihood of rehabilitation. *State v. Boehm, supra.* There is no requirement that specific matters be given any particular weight at sentencing. *Id.* All convictions and all prior criminal activity may be considered as well as other evidence normally excluded from the trial. *State v. Platt,* 43,708 (La. App. 2 Cir. 12/03/08), 998 So. 2d 864, *writ denied,* 09-0265 (La. 11/06/09), 21 So. 3d 305.

The trial court has wide discretion in imposing a sentence within the statutory limits, so absent a showing of abuse of that discretion, such a sentence will not be set aside as excessive. *State v. Mandigo,* 48,801 (La. App. 2 Cir. 02/26/14), 136 So. 3d 292, *writ denied,* 14-0630 (La. 10/24/14), 151 So. 3d 600. The reviewing court does not determine whether another

sentence would have been more appropriate, but whether the trial court abused its discretion. *State v. Jackson*, 48,534 (La. App. 2 Cir. 01/15/14), 130 So. 3d 993; *State v. Esque*, 46,515 (La. App. 2 Cir. 09/21/11), 73 So. 3d 1021, *writ denied*, 11-2347 (La. 03/09/12), 84 So. 3d 551.

Application of law to facts:

Review of the record discloses no abuse of discretion regarding the sentence imposed. The 25 year sentence was within the statutory limits of the 0-40 years offered by the state's plea agreement and was not a maximum, nor a near-maximum sentence. The trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1, and carefully detailed the aggravating and mitigating circumstances in this case.

The trial court noted the defendant's lack of criminal history and her history of drug abuse and her mental health issues. The trial court also considered the circumstances of R.M.'s birth and developmental difficulties, Shackelford's history of neglect toward her children, the injuries that R.M. suffered, and R.M.'s resulting death. The trial court reviewed letters and testimony by R.M.'s family members.

The state's plea offer afforded Shackelford a great deal of leniency in sentencing by reducing her sentencing exposure and dismissing two other criminal charges. Additionally, the trial court offered some leniency in sentencing because Shackelford took legal responsibility by pleading guilty and not causing the family to endure a trial. Regardless of whether Shackelford's situation was one that warranted any leniency, where she suffered from mental health issues only recently diagnosed, the state and the trial court clearly allowed for such considerations in providing her with a reduced sentencing exposure and a sentence significantly less than the term

that could have been imposed. It is clear that the sentence imposed was tailored to the offender and the offense. Thus, the sentence imposed here is not out of proportion to the seriousness of the offense and does not shock the sense of justice. Shackelford's assignment of error is without merit. We affirm.

## CONCLUSION

For the foregoing reasons, Shackelford's conviction and sentence are affirmed.

**AFFIRMED.**