Judgment rendered June 23, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,800-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

LADARIOUS BROWN                             Appellant

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 55725

Honorable Jeffery L. Robinson, Judge

* * * * *

PAULA C. MARX                               Counsel for Appellant


JOHN F.K. BELTON, JR.                       Counsel for Appellee
District Attorney

ERIC M. MAHAFFEY
Assistant District Attorney

* * * * *


Before MOORE, COX, and THOMPSON, JJ.

**THOMPSON, J.**

Ladarious Brown appeals his convictions of illegal use of weapons and attempted aggravated flight from an officer, and the imposition of consecutive sentences of two years at hard labor and 2½ years at hard labor, respectively. A timely motion to reconsider sentence was filed and denied. For the following reasons, we affirm the conviction and sentence for illegal use of a weapon, and vacate and remand the conviction and sentence for attempted aggravated flight from an officer.

## FACTS

On March 4, 2018, Ladarious Brown ("Brown") was at the home of Coreana Wilson ("Coreana"), his former girlfriend and mother of his two-year-old daughter. Coreana lived in the home with four of her five children, who were also in the house that day. During the visit, Brown and Coreana became confrontational, which eventually led to the series of events resulting in the charges filed against Brown. The events of that day, however, were difficult to discern at the trial as Coreana was reluctant to testify and her testimony differed from her reports to police officers on the night of the incident and later statements she made to police officers prior to trial. As sufficiency of the evidence is not an issue, we provide here an overview of the events based on the entire record.

During his visit in Coreana's residence, Brown showed those present a handgun he had recently purchased. As the evening progressed, Brown and Coreana began to argue and Coreana, angry with Brown, forced him to leave her residence. Moments later she heard several gunshots a short distance from her residence, coming from the direction Brown was traveling when he departed. Angry, and believing Brown was responsible for the shots,

Coreana called the police to report hearing gunshots and identified Brown as the likely culprit.

The police officers who responded to Coreana's call, Detective Cade Nolan ("Det. Nolan") and Assistant Chief Franklin Bilberry ("Asst. Chief Bilberry"), were advised by her that she and Brown were not in a relationship at the time and that she had argued with Brown and kicked him out of her house.[1] Coreana further advised that she thought that the gunshots she heard were from Brown shooting because he left her house mad and had shown the gun to her and her cousins earlier. She told the officer the direction in which Brown had driven, and the officers went in search of Brown.

Coreana testified that she then left her house to pick up her current boyfriend and later returned to her home. While Coreana was gone, Brown returned to her house and forced his way inside. After discovering Coreana was not at home, Brown left. When Coreana did return to her house and learned of Brown's actions, she again called police to report Brown's updated possible location in connection with his return to her house. Police officers were still in the area searching for Brown in connection with the shots fired call when Coreana initiated her second telephone call to law enforcement that evening. Det. Nolan and Asst. Chief Bilberry located 12

---

[1] At trial, Coreana testified that she and Brown were still friends and "get along." She would not agree that she kicked Brown out of her house, instead stating that he left because he was mad. Coreana testified that he did not threaten her or anyone with the gun and there was no damage to her or her property. In response to Coreana's testimony, the state called Mike Freeman ("Freeman"), an investigator with the district attorney's office, who testified that he interviewed Coreana twice during the investigation. Coreana advised him that she was angry with Brown and kicked him out of her house. Freeman agreed that Coreana had denied to him that Brown had threatened anyone with the gun; rather, Brown was proud of his recent purchase of the gun and showed it off to those present at Coreana's house.

spent shell casings in the middle of the street in a cul-de-sac approximately 150 yards from Coreana's house.  Det. Nolan testified that while the officers were standing in the roadway, Brown, whom they were familiar with, drove by them.  The police officers undertook pursuit of Brown with lights and sirens activated. Brown did not heed the efforts to stop him and traveled, not at a high rate of speed, away from the officers, running stop signs and crossing into the oncoming lane of travel along his way.  Fortunately, a good Samaritan truck driver observed Brown and the police units approaching him and he used his truck and trailer to block both lanes of travel.   As Brown approached the truck, he drove off the road and came to a stop. Brown was taken into custody without incident, and Det. Nolan testified that Brown was cooperative and apologetic.

Brown advised officers, post-*Miranda*, that he and his girlfriend had been fighting for several days and that he was at her house to check on his daughter.[2]  Brown admitted shooting the gun, stating that he stopped at the stop sign and shot it.  Brown told Det. Nolan that he shot his gun in a "bad vicinity" and that he was excited to shoot his new gun.  The officers searched Brown's car and found a Smith and Wesson .40 caliber handgun on the dash and 2 unspent .40 caliber bullets.  The clip to the handgun held 14 bullets.  A firearms expert testified that the 12 spent casings found in the cul-de-sac were fired from the handgun seized from Brown's vehicle and matched the 2 unspent rounds in the magazine, also located in the vehicle.

Det. Nolan testified that he had a brief conversation with Coreana that night prior to his departure to look for Brown.  He testified that Coreana was

_____

[2] Brown's statements were found to be admissible following a free and voluntary hearing prior to trial.

3

upset and angry and directed him to where she heard the gunfire, which she

attributed to Brown:

> She just said that they had been arguing and she said that she
> had been - - they had broken off their relationship, he was
> physically abusive to her, according to Ms. Wilson, and said
> that they had been arguing and then the - - up to that point they
> had been arguing and the second time he forced his way in the
> house, looking for her.  And said that he did - - according to
> Ms. Wilson, he did make threats once he entered the home but I
> don't know what threats those were.  I believe her children were
> inside the home.

Asst. Chief Bilberry testified that there had been previous domestic

abuse complaints involving Brown and Coreana and he corroborated Det.

Nolan's testimony regarding the instant offense.  The state rested its case

and the defense presented no evidence.

Brown, originally charged by bill of information with 11 separate

offenses, was subsequently charged by a second amended bill of information

with only two crimes, illegal use of weapons (La. R.S. 14:94) and

aggravated flight from an officer (La. R.S. 14:108.1).[3] After rejecting several

plea offers, Brown's jury trial commenced on October 28, 2019.  At the

conclusion of the trial, the jury unanimously convicted Brown as charged of

illegal use of weapons and of what was considered a responsive verdict of

"attempted" aggravated flight from an officer.  On December 17, 2019, after

considering the presentence investigative report, the court sentenced Brown

to two years at hard labor on the illegal use of weapons conviction and two

---

[3] Brown was initially arrested March 5, 2018, on charges of domestic abuse aggravated assault, home invasion, illegal use of weapons, aggravated flight, criminal trespass, driving under suspension, no insurance, expired inspection sticker, careless operation, expired registration, terrorizing and on a bench warrant for theft of utilities. Brown made bond, with the special condition that he not have any contact with Coreana. The record reveals that Brown broke that condition and contacted her on numerous occasions attempting to have her "drop the charges."  As a result, Brown's bail was revoked on February 22, 2019.

4

and one-half years at hard labor on the attempted aggravated flight from an officer conviction. The sentences were ordered to run consecutive to one another. An oral motion to reconsider was denied. A timely motion for new trial was made, but withdrawn. This appeal followed.

## DISCUSSION

Brown has asserted three assignments of error, as well as raising an error patent at oral argument. We will first address the error patent.

**Error Patent: "Attempted Aggravated Flight from an Officer" is a non-crime and not a responsive verdict to the charge of Aggravated Flight from an Officer.**

Appeals courts will review only those errors designated as an assignment of error and those errors which are "... discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." (error patent) La. C. Cr. P. Art. 920.

Review for error patent is confined to an examination of the pleadings and proceedings and does not include evidentiary review. *State v. Oliveaux*, 312 So. 2d 337 (La. 1975). The Louisiana Supreme Court has included as reviewable the caption, the statement of time and place of the holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the mentioning of the impaneling of the jury, the verdict, the judgment, the bill of particulars filed in connection with the short form indictment or information, and, in capital cases, a minute entry indicating that the jury has been sequestered as required by C. Cr. P. Art. 791. *Oliveaux, supra.*

Brown was charged, pursuant to La. R.S. 14:108.1(C), with aggravated flight from an officer, which provides in pertinent part:

    . . . .

5

C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop or of an operator to bring a watercraft to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft.

D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle or watercraft commits at least two of the following acts:

(1) Leaves the roadway or forces another vehicle to leave the roadway.
(2) Collides with another vehicle or watercraft.
(3) Exceeds the posted speed limit by at least twenty-five miles per hour.
(4) Travels against the flow of traffic or in the case of watercraft, operates the watercraft in a careless manner in violation of R.S. 34:851.4 or in a reckless manner in violation of R.S. 14:99.
(5) Fails to obey a stop sign or a yield sign.
(6) Fails to obey a traffic control signal device.

E. (1) Whoever commits aggravated flight from an officer shall be imprisoned at hard labor for not more than five years and may be fined not more than two thousand dollars.

La. R.S. 14:108.1(A) also includes provisions for misdemeanor flight from an officer.

La. C. Cr. P. Art. 814 enumerates the offenses and available responsive verdicts. La. C. Cr. P. Art. 814(A)(53), sets forth the responsive verdicts for the charge of aggravated flight from an officer. For certain enumerated crimes identified in La. C. Cr. P. Art 814, one possible responsive verdict would be "attempt" of that specific crime. Pursuant to La. R.S. 14:27, any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense

6

intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. However, the availability of "attempt" as a responsive verdict to a crime is limited by La. C. Cr. P. Art. 814. The judge or jury has the opportunity to return a responsive verdict of "attempt" to a charged crime (which has the effect of a substantial downward deviation from the maximum sentences) only for the specific crimes for which such a designation is available pursuant to La. C. Cr. P. Art. 814.

As it relates to Brown and his charge of aggravated flight from an officer, under La. C. Cr. P. Art. 814(A)(53), the only responsive verdicts available would be either: (1) Guilty; (2) Guilty of flight from an officer; or (3) Not guilty. There is no responsive verdict of "attempted aggravated flight from an officer" and it is therefore a non-crime under Louisiana law.

In *State v. Mayeux*, 498 So. 2d 701 (La. 1986), the Louisiana Supreme Court held that a conviction of "attempted aggravated battery" is "wholly invalid." In that case, the defendant was charged with two counts of aggravated battery. At the request of defense counsel, the jury instructions contained a charge that it could return a responsive verdict of attempted aggravated battery, which it ultimately did on both counts. The Louisiana Supreme Court ultimately held that, in addition to being unresponsive to the crime charged, it also purported to convict the defendant of an offense not designated as a crime in Louisiana. Because the court held the offense was a non-crime, it operated as neither a conviction nor an acquittal and double jeopardy did not attach.

Under the Louisiana Supreme Court reasoning in *Mayeux*, attempted aggravated flight from an officer is a non-crime, and the trial court's verdict

7

of guilty of attempted aggravated flight from an officer is therefore invalid. Following *Mayeux*, when the trier of fact convicts on a non-existent crime, the conviction is a nullity, and double jeopardy does not attach. We therefore vacate Brown's conviction and sentence imposed for attempted aggravated flight from an officer and remand the matter to the trial court for retrial or other proceedings, if any, which it may deem appropriate.

Having now vacated Brown's conviction and sentence for attempted aggravated flight from an officer, we will limit our discussion on the asserted assignments of error to the conviction and sentence for the illegal use of a weapon charge. The elements and discussion of the first two assignments of error are interrelated and are therefore consolidated for discussion purposes.

**Assignments of Error Numbers One and Two:** **Maximum sentence is excessive; Failure to particularize sentence to this first felony offender.**

Brown was convicted by a jury of the responsive verdict of illegal use of a weapon, and sentenced to two years at hard labor, the maximum jail term provided in La. R.S. 14:94. Appellate counsel for Brown argues that, as a first-felony, 24-year-old-offender, the maximum sentence imposed is constitutionally excessive. Counsel emphasizes that there was no personal injury or property damage, and that Brown's criminal history includes only three misdemeanors: a traffic violation in 2016, one count of criminal mischief in 2013, and theft of utilities in 2017. Counsel suggests Brown made an impulsive decision to fire his new gun, but had no intent to harm anyone, and that while he initially fled, Brown thought better and stopped his vehicle and politely and apologetically cooperated with police. Counsel continues to assert that the trial court incorrectly found that Brown used

8

threats of violence in this offense and failed to address any mitigating factors required by La. C. Cr. P. art. 894.1. Brown is asserted not to be the worst of offenders, and that the maximum sentence makes no useful contribution to justice for this youthful, remorseful, first-offender. Counsel submits that this Court is duty-bound to overturn this sentence as it "inflict[s] excessive retribution on the offender."

The state argues that the trial court adequately complied with La. C. Cr. P. art. 894.1 and articulated its findings. The court ordered and reviewed a presentence investigation report and addressed the applicable factors in Article 894.1, particularizing the sentence imposed to this offender. The state also asserts the record supports the sentence imposed on the charge of illegal use of weapons and the sentence cannot be said to be "grossly disproportionate" to the crime committed.

### _Applicable law_:

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. _State v. Smith_, 433 So. 2d 688 (La. 1983); _State v. DeBerry_, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, _writ denied_, 16-0959 (La. 5/1/17), 219 So. 3d 332. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. _State v. Lanclos_, 419 So. 2d 475

(La. 1982); *State v. DeBerry*, *supra*. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. DeBerry*, *supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351.

The second prong requires the court to determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. DeBerry*, *supra*.

As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cotten*, 50,747 (La. App. 2 Cir. 8/10/16), 201 So. 3d 299. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Duncan*, 47,697 (La. App. 2 Cir. 1/16/13), 109 So. 3d 921, *writ denied*, 13-0324 (La. 9/13/13), 120 So. 3d 280. The trial court is in the best position to consider the aggravating and mitigating circumstances of a particular case,

10

and, therefore, is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996); *State v. Jackson*, *supra*. On review, an appellate court does not determine whether another sentence may have been more appropriate but whether the trial court abused its discretion. *State v. Jackson*, 48,534 (La. App. 2 Cir. 1/15/14), 130 So. 3d 993. General rules, however, do not result in the same results when the factual scenarios presented are different.

In selecting a proper sentence for a criminal defendant, a trial judge is not limited to considering only prior convictions and may review all evidence of prior criminal activity. *State v. Monk*, 42,067 (La. App. 2 Cir. 5/2/07), 956 So. 2d 185, 188; *State v. Cooks*, 36,613 (La. App. 2 Cir. 12/4/02), 833 So. 2d 1034. When evaluating a defendant's criminal history, trial courts may consider evidence at sentencing that would otherwise be inadmissible at trial. *State v. Myles*, 94-0217 (La. 6/3/94), 638 So. 2d 218. For example, the trial court may consider records of prior arrests, hearsay evidence of suspected criminal activity, conviction records, and evidence of uncharged offenses or offenses that were nolle prossed. *State v. Anderson*, 30,060 (La. App. 2 Cir. 10/29/97), 702 So. 2d 40; *State v. Emerson*, 31,408 (La. App. 2 Cir. 12/09/98), 722 So. 2d 373, *writ denied*, 99-1518 (La. 10/15/99), 748 So. 2d 470; *State v. Myles, supra*. The trial judge must also take notice of the facts of each particular instance, paying particular attention to the dangers posed, and not a strict adherence to whether such negligent and dangerous acts were the first such occasion. The actions of some defendants, even if the first felony prosecuted, rise to such a level as to

11

support the imposition of a legislatively designated sentence range, even those reaching the maximum sentences.

La. R.S. 14:94, Illegal use of weapons or dangerous instrumentalities, provides in pertinent part:

A. Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being.

B. Except as provided in Subsection E, whoever commits the crime of illegal use of weapons or dangerous instrumentalities shall be fined not more than one thousand dollars, or imprisoned with or without hard labor for not more than two years, or both.

. . . .

E. Whoever commits the crime of illegal use of weapons or dangerous instrumentalities by discharging a firearm from a motor vehicle located upon a public street or highway, where the intent is to injure, harm, or frighten another human being, shall be imprisoned at hard labor for not less than five nor more than ten years without benefit of probation or suspension of sentence.

## *Application of law to facts*:

Based on Brown's statements to police officers, there exists the possibility he could have been sentenced under subsection E of the statute, which provides a harsher penalty for an offender who discharges "a firearm from a motor vehicle located upon a public street or highway, where the intent is to injure, harm, or frighten another human being (Coreana). . ." Conviction under this subsection carries a penalty of five to ten years without benefits. The trial court sentenced Brown under the general subsection B, which carries a penalty of a fine of "not more than one thousand dollars, or imprison[ment] with or without hard labor for not more

12

than two years, or both." The sentencing judge was fully aware of the circumstances surrounding this offense, including the confrontation and discharge of a weapon numerous times in proximity to the house, and extended a measurable benefit to Brown by sentencing him under subsection B of the statute.

Notwithstanding those considerations, on its merits, the sentence imposed under these facts and circumstances is not excessive. The trial court, presented with testimony that Brown, jubilant with a new firearm purchase, negligently discharged that weapon 12 times at a stop sign, with an apartment complex as a backdrop, with no apparent concern for where those bullets may find their course back to the ground. The risk of harm was great, and it was easily foreseeable that Brown's actions may result in great bodily harm and even death to those in the immediate vicinity. That risk was repeated with each successive shot fired by Brown. The sentencing judge is permitted to take into consideration the number of dangerous and negligent actions, pulling the trigger 12 distinct times, and launching 12 projectiles toward the residences and vehicles where others most certainly could expect to be located, when sentencing Brown. The dangers and risks multiplied with each shot fired. Although Brown may be considered a first-time offender, he is a twelve-time actor in creating havoc and danger to others with each shot.

The trial judge succinctly recited the applicable code articles. The trial judge then expressly stated the factors of La. C. Cr. art. 894.1 that he found applicable. The trial judge found an undue risk that Brown would commit another offense if given a suspended or probated sentence. He further found that Brown needed treatment in a custodial environment

provided by a correctional institution and that any lesser sentence would deprecate the seriousness of the offenses. The trial judge then stated that the "offender used threats of actual violence in the commission of this offense," indicating that the trial judge credited the testimony of the officers that Coreana was threatened when Brown forced his way into her home and that Coreana was angry and afraid and knew that Brown was armed. Finally, citing paragraphs 10 and 19 of the article, the trial judge noted that Brown used a dangerous weapon, the .40 caliber handgun, in the commission of the offense.

Brown requested leniency based on the lack of injury and Coreana's testimony at trial. Based on the presentence investigation report and consideration of the Article 894.1 factors, the trial judge imposed a sentence as set forth herein. The trial judge then noted that Brown would get credit for time served, which, according to the presentence investigation calculation, was 479 days. Brown spoke after sentencing and asked for a reduced sentence on the weapons conviction based on the fact that no one was injured, to which the judge responded that there was no lesser sentence and no probation. The sentence was ordered to be served at hard labor.

Of the many possible charges supported by Brown's actions, he was ultimately convicted of illegal use of weapons and was sentenced under the more lenient subsection B, which allowed for a two-year hard labor sentence, rather than subsection E under which he would have been exposed to 5 to 10 years. In close proximity of time and location of a heated domestic altercation, the defendant fired 12 rounds from a pistol from inside his vehicle and he subsequently fled and attempted to evade police. Under these specific facts and circumstances, this sentence is not excessive and

14

does not shock the sense of justice. We cannot, therefore, conclude the trial court was manifestly erroneous in imposing the maximum sentence under these specific facts and circumstances.

We find that the record supports the sentence for illegal use of weapons as imposed and that conviction and sentence are affirmed.

**Assignment of Error Number Three:  No justification for consecutive sentences.**

As the attempted aggravated flight from an officer conviction was vacated and remanded, we pretermit any discussion as to the assignment of error addressing the consecutive nature of the defendant's sentences.

## CONCLUSION

For the foregoing reasons, the defendant's conviction and sentence for illegal use of weapons is affirmed, and the defendant's conviction and sentence for attempted aggravated flight from an officer is vacated and this matter is remanded for further proceedings consistent with this opinion.

**AFFIRMED IN PART AND VACATED AND REMANDED IN PART.**